NATIONAL UTILITY REVIEW, LLC, PLAINTIFF v. CARE CENTERS, INC., DEFENDANT

No. COA08-1554

(Filed 6 October 2009)

**Jurisdiction— personal—Illinois corporation—doing business in North Carolina—findings**

The trial court's findings of fact adequately supported its conclusion that defendant was subject to personal jurisdiction in North Carolina where defendant was an Illinois corporation that entered into a contract with plaintiff, a North Carolina corporation, to be performed in North Carolina. Defendant's contacts with North Carolina were not numerous, but the controversy arose from those contacts, and defendant purposefully availed itself of the benefits of doing business in North Carolina and reasonably could have expected that it would be brought into North Carolina courts.

Appeal by defendant from an order entered 18 September 2008 by Judge Lindsay R. Davis, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 19 August 2009.

*Tuggle Duggins & Meschan, P.A., by David F. Meschan, Robert C. Cone and David L. Bury, Jr., for plaintiff-appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jim W. Phillips, Jr., Jennifer K. Van Zant and Benjamin R. Norman, for defendant-appellant.*

JACKSON, Judge.

Care Centers, Inc. ("defendant") appeals the 13 September 2008 order denying its motion to dismiss for lack of personal jurisdiction. For the following reasons, we affirm.

National Utility Review, LLC ("plaintiff") is a limited liability company with its main office and principal place of business in Guilford County, North Carolina. Plaintiff's business consists of contracting with other companies, reviewing their utility and telephone usage and bills, and recommending changes to increase efficiency and lower costs. Plaintiff charges a percentage of the money saved as its fee. Defendant is an Illinois corporation with its main office and principal place of business in Illinois. Defendant provides financial management services to nursing homes in Illinois, Indiana, and Ohio. Eric Rothner ("Rothner") is defendant's founder. Hunter Management ("Hunter") "owned and operated [] defendant (and(or) CCS Employee Benefits Group, Inc., a company which provided employee benefit services to [] defendant and nursing homes)[.]"

On or about April 2006, Kimmi Rudolph ("Rudolph"), Hunter's employee and Rothner's stepdaughter, and Christopher Leng ("Leng"), a member and manager of plaintiff, began speaking about plaintiff's business. On or about May 2006, plaintiff sent proposals and contract agreements to Rudolph to send to defendant in Illinois. The agreements were accepted by plaintiff and signed in Illinois. The record is unclear as to whether the original contracts offered by plaintiff were accepted, whether new contracts were solicited by defendant, or whether defendant made a counter-offer.

Plaintiff performed its services—reviewing defendant's phone and utility records and making recommendations for decreasing operating costs—from its location in North Carolina. Defendants were aware of plaintiff's location and facilitated its work by sending the necessary invoices to plaintiff from Illinois. Defendant paid plaintiff a total of $882.08. On 30 October 2007, plaintiff filed a complaint against defendant in the Superior Court of Guilford County, North Carolina. Plaintiff alleged breach of contract and unfair and deceptive trade practices. Plaintiff also claimed that defendant had not reported its cost savings to plaintiff as required by contract and requested an accounting of defendant's utility service cost savings.

On 4 February 2008, defendant filed its answer, which included a motion to dismiss for lack of personal jurisdiction. On 21 February 2008, the trial court ordered both parties to continue with discovery and move the case toward trial. On 12 August 2008, defendant filed a motion to dismiss for lack of personal jurisdiction. The trial court heard argument on the issue on 3 September 2008 and entered an order denying the motion to dismiss on 18 September 2008. Defendant appeals the denial of the motion to dismiss.

Neither party contests the findings of fact of the trial court in its 18 September 2008 order. " 'When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.' " *Eaker v. Gower*, 189 N.C. App. 770, 773, 659 S.E.2d 29, 32 (2008) (quoting *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005)); *see also State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 188 N.C. App. 302, 304, 655 S.E.2d 446, 448 (2008) (citing *Robbins v. Ingham*, 179 N.C. App. 764, 768, 635 S.E.2d 610, 614 (2006)). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (citing *Schloss v. Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962); *Williams v. Williams*, 97 N.C. App. 118, 121, 387 S.E.2d 217, 219 (1990)). Our review, therefore, is limited to "the issue of whether the trial court's findings of fact support its conclusion of law" that the court has personal jurisdiction over defendant. *Cooper*, 188 N.C. App. at 304, 655 S.E.2d at 448. We conduct our review of this issue *de novo. Deer Corp. v. Carter*, 177 N.C. App. 314, 326, 629 S.E.2d 159, 168 (2006).

The analysis used to determine the existence of personal jurisdiction in North Carolina is well-established.

First, jurisdiction over the action must be authorized by N.C.G.S. § 1-75.4, our state's long-arm statute. Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

*Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006) (citing *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 675, 231 S.E.2d 629, 630 (1977)). Both parties stipulate that the North Carolina long-arm statute applies and do not argue that issue on appeal. Therefore, our analysis is limited to whether "the exercise of this jurisdiction over [] defendant comport[s] with constitutional standards of due process[.]" *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 283, 350 S.E.2d 111, 113 (1986).

Due process requires "certain minimum contacts [between the nonresident defendant and the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316,

90 L. Ed. 95, 102 (1945). In addition, a defendant must "purposefully avail[] himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986); *see also Deer Corp.*, 177 N.C. App. at 326, 629 S.E.2d at 168. Sufficient minimum contacts may be based upon either specific jurisdiction or general jurisdiction. *See Banc of Am.*, 169 N.C. App. at 696, 611 S.E.2d at 184. "Specific jurisdiction exists when 'the controversy arises out of the defendant's contacts with the forum state.' " *Id.*

The existence of sufficient minimum contacts to permit personal jurisdiction is determined "by a careful scrutiny of the particular facts of each case." *Cameron-Brown*, 83 N.C. App. at 284, 350 S.E.2d at 114.

> In determining whether sufficient minimum contacts exist, the Court should consider (1) the quantity of contacts between defendants and North Carolina; (2) the nature and quality of such contacts; (3) the source and connection of plaintiff's cause of action to any such contacts; (4) the interest of North Carolina in having this case tried here; and (5) convenience to the parties.

*First Union Nat'l Bank of Del. v. Bankers Wholesale Mortgage, LLC*, 153 N.C. App. 248, 253, 570 S.E.2d 217, 221 (2002). "No single factor controls; rather, all factors 'must be weighed in light of fundamental fairness and the circumstances of the case.' " *Corbin Russwin, Inc. v. Alexander's Hardware, Inc.*, 147 N.C. App. 722, 725, 556 S.E.2d 592, 595 (2001) (quoting *B.F. Goodrich Co. v. Tire King*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986)). Beyond the "minimum contacts" determination,

> the Court should take into account (1) whether defendants purposefully availed themselves of the privilege of conducting activities in North Carolina, (2) whether defendants could reasonably anticipate being brought into court in North Carolina, and (3) the existence of any choice-of-law provision contained in the parties' agreement.

*Id.* (citations omitted). The "relationship between the defendant and the forum must be 'such that he should reasonably anticipate being haled into court there.' " *Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 786 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980)).

The trial court found that sufficient contacts existed between defendant and North Carolina to satisfy the requirements of due process. This conclusion of law was based upon a number of uncontested findings of fact, including: (1) plaintiff, with whom defendant entered into a contract, is a North Carolina company, (2) defendant knew the work done by plaintiff would be performed in North Carolina, (3) such work was, in fact, done by plaintiff in North Carolina, (4) defendant facilitated the performance of this work by forwarding invoices to plaintiff in North Carolina, (5) all payments made to plaintiff were mailed to it in North Carolina, and (6) "[n]o substantial disparity exists between [] plaintiff and [] defendant as to the ability to conduct litigation in a remote forum, and the inconvenience to do so is not substantially greater for the defendant than for the plaintiff." The trial court addressed many of the factors involved in a minimum contacts determination with these findings of fact. Similar to the trial court, we recognize that defendant's contacts "are not great in quantity[;]" nonetheless, because they "are at the core of the parties' relationship[,] . . . their quality is substantial." Because "the controversy [arose] out of the defendant's contacts with the forum state[,]" *Banc of Am.*, 169 N.C. App. at 696, 611 S.E.2d at 184, these contacts establish specific jurisdiction. We, therefore, hold that the trial court's findings of fact sufficiently support its conclusion of law that the defendant had minimum contacts with North Carolina.

Defendant also must have purposefully availed itself of the benefits of doing business in North Carolina in order to satisfy due process. Defendant argues that the fact that it knew the work under the contract was to be performed in North Carolina "does not matter." We disagree.

It is the clear, consistent rule that knowledge of the location of the work is relevant and does matter for a purposeful availment analysis. *See, e.g., Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 787 (defendant's awareness "that the contract was going to be substantially performed in this State" was relevant to whether defendant purposefully availed itself of state's benefits). Defendant's knowledge that plaintiff is located in North Carolina and that the services expected from plaintiff were to be performed in North Carolina enabled it to "reasonably anticipate being brought into court in North Carolina." *First Union*, 153 N.C. App. at 253, 570 S.E.2d at 221. Therefore, defendant purposefully availed itself of the benefits of doing business in North Carolina and reasonably could have expected that it would be brought into this state's courts.

Although some facts that could have informed a minimum contacts analysis remain unclear from the record, those facts were not essential to the trial court's conclusions of law. We hold that the trial court's findings of fact adequately support its conclusion of law that defendant is subject to personal jurisdiction in North Carolina with respect to its contract with plaintiff.

For the reasons stated above, we hold that the trial court's findings of fact adequately support its conclusion of law that defendant is subject to personal jurisdiction in North Carolina in this matter.

Affirmed.

Judges McGEE and ERVIN concur.